**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

———————————————————

**WILLIAM ALBERT MAECKER,**

                                              **Plaintiff,**                    **13-CV-0769A(Sr)**

**v.**

**O'REILLY MEDIA, INC., MAKER MEDIA, INC.,**
**MAK E MAGAZINE and MAKER FAIRE,**

                                              **Defendants.**

———————————————————

## <u>REPORT, RECOMMENDATION AND ORDER</u>

          This case was referred to the undersigned by the Hon. Richard J. Arcara,

pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon

dispositive motions.  Dkt. #10.


          Currently before the Court is defendant, O'Reilly Media Inc.'s motion to

dismiss the complaint[1] (Dkt. #7) pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure and plaintiff's motion for discovery (Dkt. #8).  For the following reasons, it is

recommended that defendant's motion to dismiss be granted.

———————————————

          [1] In its Memorandum of Law filed in support of the instant motion to dismiss,
defendant, O'Reilly Media Inc. states, "although the Complaint references various
affiliates and divisions of O'Reilly, O'Reilly was the party to the contract with the Plaintiff
and O'Reilly was the only entity which was served."  Dkt. #7-1, n.1.  As such, this Court
will refer to the defendant as O'Reilly Media, Inc. (hereinafter, "O'Reilly").

**BACKGROUND**

Plaintiff's *pro se* complaint seeks to recover monetary damages for what he alleges was "constructive fraud to plaintiff, overreaching, breach of contract, tortuous [sic] interference with business relationships and constructive fraud to the public."   Dkt. #1.   Plaintiff's complaint is premised on the theory that defendants were "unfair" to plaintiff and that such "unfairness" gives rise to compensable causes of action sounding in tort and breach of contract.   Because plaintiff's underlying theory is fatally flawed, so too are plaintiff's causes of action against defendant O'Reilly. and therefore, for the reasons set forth below, this Court recommends that defendant's motion to dismiss be granted.

**Plaintiff's Allegations**

Following approximately one month of negotiations, the parties entered into an agreement on March 20, 2009, for the sale of the domain name www.makermade.com to O'Reilly.[2]  Dkt. #1, ¶¶51-52.  Plaintiff specifically alleges that an "agreement was reached for about $30,000, being $13,000. cash and the balance as two years of advertising in MAKE Magazine and one million banner ads on www.makezine.com."  *Id*. at ¶48.  Plaintiff thereafter alleges that, "On May 21st 2009 [sic], at the last minute, MAKER Faire revised the contract to impose an unreasonable time restraint on MAKER Toys for a time to begin using ads by January 1st, 2010."  *Id*.

_____

[2] Although plaintiff's complaint references a May 20, 2009 agreement, other documents attached to the complaint, as well as defendant's motion indicate that the agreement was, in fact, made on March 20, 2009.

at ¶53.  In an affidavit attached to the complaint, plaintiff explains that "upon seeing the new clause, Plaintiff stated that he wanted the clause removed.  Plaintiff suggested a replacement for the clause that should have been reasonable to both, along with other minor changes. . . . O'Reilly Media would not remove the clause.  The change was overreaching by O'Reilly Media.  Plaintiff was forced to accept O'Reilly's offer or lose the potential offer.  O'Reilly was strong and Maecker was weak."  Dkt. #1, pp.28-29. Plaintiff next alleges that "continued external issues caused MAKER Toys to be unable to be ready until summer of 2012.  The issues were unavoidable and can be considered excusable neglect."  Dkt. #1, ¶¶54-55.

Plaintiff commenced the instant action on July 25, 2013 asserting five causes of action: constructive fraud; overreaching; breach of contract; tortious interference with business relationships; and, constructive fraud against the public.  Dkt. #1.  In opposition to the instant motion to dismiss, plaintiff maintains that O'Reilly refused to respond to Plaintiff's pleas for fairness and that, in 2012, plaintiff offered to settle this issue by accepting one half of what was owed.  Dkt. #8, p.4.  Indeed, with respect to his desire to settle this matter, plaintiff states in his opposition,

> Mr. Maecker would have settled for $18,000.
>
> No offer of settlement came from O'Reilly Media.
>
> Mr. Maecker would have accepted $10,000., enough to pay back mortgage owed.
>
> No offer of settlement has come from O'Reilly Media.
>
> Instead, O'Reilly Media chose to ignore damage it caused.

O'Reilly did not help the company it offered partnership with.

Instead of helping, O'Reilly retained an expensive "Boutique Lawfirm" as counsel.

Costs of Counsel's retainer most probably equal what could have been settled for.

Dkt. #8, p.4.

## DISCUSSION AND ANALYSIS

### Dismissal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### Evidentiary Standard

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration "to facts stated on the face of the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard*

*F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999); *see also*

*Kramer v. Time Warner, Inc*., 937 F.2d 767, 773 (2d Cir. 1991).  "Where a plaintiff has

relied on the terms and effect of a document in drafting the complaint and that

document is thus integral to the complaint," the district court may consider the contents

of the document "even if it is not formally incorporated by reference."  *Broder v.

Cablevision Systems Corp*., 418 F.3d 187, 196 (2d Cir. 2005) (internal quotations

omitted), *quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  "If

the documents referenced in the complaint contradict the facts alleged by the plaintiff,

the documents control and the court need not accept as true the plaintiff's allegations."

*Olin Corp. v. E.I. Dupont De Nemours and Corp.*, No. 05-CV-100S(Sc), 2006 WL

839415 (W.D.N.Y. March 27, 2006).

A district court may take judicial notice of documents filed in other courts

to establish the fact of such litigation and related filings.  *Kramer*, 937 F.2d at 774.  A

district court may also "take judicial notice of admissions in pleadings and other

documents in the public record filed by a party in other judicial proceedings that

contradict the party's factual assertions in a subsequent action."  *Harris v. New York

State Dep't of Health*, 202 F. Supp.2d 143, 173 n.13 (S.D.N.Y. 2002), *citing Kramer*,

937 F.2d at 774.  In the matter of *Pandozy v. Robert J. Gumenick, P.C.*, for example,

the district court granted a motion to dismiss a cause of action for attorney malpractice

on statute of limitations grounds where plaintiff's second amended complaint alleged

continuous representation, but prior complaints in that action and other actions, as well

as documents authored by plaintiff, stated that plaintiff had terminated the attorney.
No. 07 Civ. 1242, 2008 WL 2190151, at *3 (S.D.N.Y. May 23, 2008).

Although plaintiff has not sought leave to amend his complaint, defendant
has taken the position that dismissal of the complaint should be with prejudice and
without leave to amend because any amendment would be futile.  "[L]eave to amend
will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6)
motion to dismiss for failure to state a claim, *i.e.*, if it appears beyond doubt that the
plaintiff can plead no set of facts that would entitle him to relief."  *Milanese v. Rust-
Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001), *citing Ricciuti v. N.Y.C. Transit Auth.*,
941 F.2d 119, 123 (2d Cir. 1991).  "Thus, while futility is a valid reason for denying a
motion to amend, this is true only where it is beyond doubt that the plaintiff can prove
no set of facts in support of his amended claims." *Pangburn v. Culbertson*, 200 F.3d 65,
70-71 (2d Cir. 1999).  The decision to grant or deny a motion for leave to amend a
pleading is within the discretion of the district court.   *Foman v. Davis,* 371 U.S. 178,
182 (1962).

**Constructive Fraud/Overreaching Causes of Action**

Plaintiff's first cause of action is labeled "Constructive Fraud to Plaintiff."
Dkt. #1, pp.7-9.  Under New York law, in order to prevail on a claim of actual fraud, five
elements must be proven, (1) a material misrepresentation or omission of fact, (2)
made with knowledge of its falsity; (3) with an intent to defraud; and, (4) reasonable

reliance on the part of the plaintiff; (5) that causes damage to the plaintiff.  *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91 (1997).  "Constructive fraud requires establishing the same elements as actual fraud, 'except that the element of scienter is replaced by a fiduciary or confidential relationship between the parties.'" *E\*TRADE Financial Corp. v. Deutsche Bank AG*, 631 F.Supp.2d 313, 387 (S.D.N.Y. 2009), *citing*, *Apace Communications, LTD. v. Burke*, 522 F.Supp.2d 509, 519 (W.D.N.Y. 2007). More specifically, this fiduciary or confidential relationship is one "warranting the trusting party to repose his confidence in the defendant and therefore relax the care and vigilance that he would normally exercise in the circumstances."  *Brown v. Lockwood*, 76 A.D.2d 721, 731 (2nd Dept. 1980); see also, @*Wireless Enterprises, Inc. v. AI Consulting, LLC*, No. 05-CV-6176(CJS), 2006 WL 3370696, at *8 (W.D.N.Y. 2006) (Such a relationship requires a "high degree of dominance and reliance," and where the parties have an arm's length business relationship, a plaintiff's "subjective claims of reliance on defendant['s] expertise" are insufficient.) (*quoting, SNS Bank, N.V. v. Citibank, N.A.*, 7 A.D.3d 352, 355, 777 N.Y.S.2d 62, 65 (1st Dept. 2004)).


        With respect to the pleading requirements, "Courts have not applied Rule 9(b) to claims of constructive, rather than actual, fraud."  *Apace Communications, LTD. v. Burke*, 522 F.Supp.2d 509, 519 (W.D.N.Y. 2007), *citing Cendant Corp. v. Shelton*, 474 F.Supp.2d 377, 280 (D.Conn. 2007); *see also, Sullivan v. Kodsi*, 373 F.Supp.2d 302, 307 (S.D.N.Y. 2005) ("Claims of constructive fraud do not need to meet the heightened pleading requirements" of Rule 9(b)).  "Constructive fraud claims, however,

are still subject to the "plausibility" requirements of Rule 8 as enunciated in *Twombly*."

*Apace Communications, LTD. v. Burke*, 522 F.Supp.2d 509, 519-20 (W.D.N.Y. 2007).

Plaintiff's claim of constructive fraud must fail for several reasons.  First, plaintiff has failed to plead a material misrepresentation or omission of fact by O'Reilly. Indeed, plaintiff admits in his affidavit submitted with the complaint that when he accepted O'Reilly's offer to purchase the www.makermade.com domain name, and further, accepted the $13,000 cash payment, he knew that he was required to begin using the free advertising by January 1, 2010.  Moreover, plaintiff has not plead the required fiduciary relationship necessary to state a claim for constructive fraud. Although plaintiff summarily alleges in his complaint that O'Reilly was strong and he was weak, plaintiff alleges no facts to support a finding that there existed a special relationship that would give rise to the imposition of a duty on O'Reilly to act for plaintiff's benefit.  Indeed, the documents filed with the complaint and in opposition to the instant motion to dismiss demonstrate that, contrary to plaintiff's conclusory statements, the sale of the domain name was a purely commercial transaction negotiated at arm's length.  The original proposal and ensuing negotiations were exchanged between the parties and ultimately, as plaintiff readily admits, he accepted the terms of the agreement and further, accepted the $13,000 cash payment, as well as the time frame for plaintiff to use the free advertising.  That plaintiff was unable to avail himself of the advertising portion of the negotiated transaction because "continued external issues caused MAKER Toys to be unable to be ready until summer of 2012," does not constitute a cause of action for fraud.  As stated by defendant in support of the

instant motion,

> The mere fact that Plaintiff was not happy with that particular
> term after the fact, or agreed to it because he did not want to
> lose the cash portion of O'Reilly's offer, does not give rise to
> a claim for either common law or constructive fraud. Thus,
> Plaintiff's factual admissions show that, even if he sought to
> amend the Complaint, such a request would be futile since
> this was admittedly a commercial transaction in which he
> knew that he was accepting terms he was not pleased with
> and there can be no basis for claiming "fraud" or a "fiduciary
> relationship."

Dkt. #7-1, p.9. This Court agrees that plaintiff's subsequent dissatisfaction and/or

inability to comply with some of the terms of the negotiated transaction does not give

rise to a claim of fraud. Accordingly, for the foregoing reasons this Court recommends

that plaintiff's claims for constructive fraud and overreaching be dismissed.


**Breach of Contract**

To state a claim in federal court for breach of contract under New York

law, a complaint need only allege (1) the existence of an agreement, (2) adequate

performance of the contract by the plaintiff, (3) breach of contract by the defendant, and

(4) damages. *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996), *citing*, *Tagare v.

Nynex Network Sys. Co.*, 921 F.Supp. 1146, 1149 (S.D.N.Y.1996); *see also* 5 Charles

A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1235 (1990).


Here, even with the liberal construction given to *pro se* complaints,

plaintiff's complaint is nothing more than an airing of plaintiff's dissatisfaction with

O'Reilly's decision not to grant him an extension of the contractually agreed upon

deadline for the use of the free advertising.  O'Reilly had no duty to extend the deadline

and O'Reilly had fully performed under the terms of the March 20, 2009 agreement by

paying plaintiff $13,000 cash consideration and making free advertising available to the

plaintiff during the contractually agreed upon period.  Dkt. #7-1, p.4.  As discussed

above, plaintiff accepted the terms of the agreement and the $13,000 cash payment

and plaintiff was unable to avail himself of the advertising because, in plaintiff's own

words, "continued external issues caused MAKER Toys to be unable to be ready until

summer of 2012."  Absent any allegation of a breach by defendant, there can be no

basis to assert a breach of contract claim.  Accordingly, for these reasons, the Court

recommends that defendant's motion to dismiss plaintiff's breach of contract claim be

granted.


**Interference with Prospective Business Relationships**

Plaintiff's next claim is titled "tortuous [sic] interference with business

relationships."  Dkt. #1, pp.12-13.  Specifically, plaintiff alleges,

> 79.  Maecker was completely transparent and open with
> MAKER Faire.
>
> 80.  MAKER Faire gained knowledge of MAKER Toys
> business relationships with NASA, EAA, Smithsonian and
> others.
>
> 81.  MAKER Faire gained full knowledge of Maecker's
> personal family obligations, his businesses being on hold
> and his financial situation.
>
> 82.  MAKER Faire used this knowledge and imposed an
> unfair clause to the contract at the last minute, with intent to
> destroy its competitor, Maecker.

83.  MAKER Faire gambled that Maecker would not be able
to meet the deadline MAKER Faire imposed.

* * *

92.  MAKER Faire was unfair, when ample opportunity to be
fair existed and was simple to be fair.

93.  MAKER Faire had knowledge of all business and
finances of its competitor MAKER Toys.

94.  MAKER Faire used that knowledge to destroy Maecker
and MAKER Toys.

95.  Maecker and his family were harmed, potential
customers were harmed, US taxpayers who paid for NASA
education materials were harmed, children were harmed.

96.  MAKER Faire gained by tortuous [sic] interference.

Dkt. #1, pp.12-13.  In order to state a claim for tortious interference with prospective

economic advantage under New York law, a plaintiff must show, (1) business relations

with a third party, (2) defendants' interference with those business relations, (3) that

defendants acted with the sole purpose of harming the plaintiff or used dishonest, unfair

or improper means, and, (4) injury to the relationship.  *Raedle v. Credit Agricole

Indosuez*, 670 F.3d 411 (2d Cir. 2012), *citing, Purgess v. Sharrock*, 33 F.3d 134 (2d Cir.

1994).


"A tortious interference with prospective economic advantage claim is

'very difficult to sustain.'  Mere suspicions are inadequate to support a claim for tortious

interference with business relations.  A claim for interference with advantageous

business relationships must specify some *particular, existing* business relationship

through which plaintiff would have done business but for the allegedly tortious

behavior." *Emamian v. Rockefeller University*, No. 07 Civ. 3919 (DAB), 2008 WL

4443824, at *7 (S.D.N.Y. Sept. 25, 2008) (internal citations omitted, emphasis in

original).  Here, plaintiff's complaint mentions, without specificity, a business

relationship with "NASA, EAA and Smithsonian."  Beyond that, however, plaintiff fails to

identify any interference with those relationships and more specifically, any injury to

those relationships.  In fact, plaintiff later alleges that his family, potential customers

and US taxpayers who paid for NASA education materials were harmed.  However,

neither harm directed toward plaintiff nor harm to potential customers is sufficient to

state a claim for tortious interference with prospective business relations.  Moreover,

plaintiff himself has admitted that it was continued external issues that caused MAKER

Toys to be unable to be ready until summer of 2012.  Accordingly, because plaintiff has

failed to plead any of the required elements to sustain a claim for tortious interference,

his claim must fail, and this Court recommends that defendant's motion to dismiss be

granted.


**Constructive Fraud to the Public**

Plaintiff's final claim is titled "Constructive Fraud to the Public" and

consists of a series of allegations concerning defendant O'Reilly and its president, Tim

O'Reilly, as well as allegations pertaining to unrelated and unknown "inventors."  Dkt.

#1, pp.13-16.  Specifically, plaintiff alleges,

> 121.  Propagating lies of freedom to create; of opportunity to
> wealth, of idealistic altruism destroy person after person who
> accepts the lies of the corporate capitalistic world.

122.   Tim O'Reilly personally presents these lies as his mantra.

123.   Tim O'Reilly's poem of wrestling the angel who will defeat you, be defeated and come back stronger, are merely metaphors for the hardships every inventor will be subjected to as they hope for personal gain and recognition from their hard work and efforts; while in fact the angel Tim O'Reilly describes is really himself, the corporate giant preaching the story.

124.   Tim O'Reilly in fact is the merciless angel to wrestle with, that he describes.

125.   The corporate giants that killed Aaron Schwartz by imposing their power over government are in fact the same ones propagating the myths of reward and gain from being an inventor.

126.   MAKER Faire is the ultimate example of this myth.

127.   MAKER Faire being unfair to Maecker is the ultimate tale of the reality of these lies.

128.   O'Reilly Media gains, Aaron Schwartz and Maecker as idealists and believers of O'Reilly's talk of idealism, have been crushed.

129.   By these presentations of idealism and providing forum where these individuals can be drawn in and selectively taken advantage of, represents a situational presence of targeting of naïve young people by a predator.

Dkt. #1, ¶¶ 121-129.  This claim as drafted is nearly indecipherable and the Court has struggled to comprehend just what claim the plaintiff thinks he has alleged and more specifically, what relief he believes he may be entitled to.  In its motion to dismiss, defendant construes this claim "as broadly as possible by treating it as a claim for punitive damages."  Dkt. #7, p.12.  On that basis, defendant argues that a claim for punitive damages does not constitute a separate cause of action and furthermore,

punitive damages are not recoverable for an ordinary breach of contract.  In making this

argument, defendant relies on plaintiff's repeated and consistent admission in his

complaint that, "his dispute is a contractual one and that his objection here is to the

unfairness of Defendant's refusal to simply give him an extension of time not granted

under the express terms of the contract."  Dkt. #7, p.13.  Accordingly, defendant argues

that since a contractual dispute is not subject to punitive damages, plaintiff's fifth claim

should be dismissed and further, an amendment would be futile.


It is not clear to the Court just what relief plaintiff seeks by this claim and

plaintiff's responses to the instant motion to dismiss shed no light on this question.  In

fact, plaintiff's initial response to the instant motion would suggest that plaintiff's sole

purpose in commencing this action was to extract a settlement from defendant.  *See*

Dkt. #8.  In plaintiff's second response (Dkt. #12), plaintiff seeks to clarify that in fact

this action is not a breach of contract action, but rather a constructive fraud action.  Dkt.

#12, p.2.  Notwithstanding the foregoing, neither plaintiff's complaint nor his responses

to the instant motion would support a claim for constructive fraud.  *See supra* at pp.6-9.

Plaintiff simply reiterates his generalized claims that defendant O'Reilly was "unfair" and

that it was seeking to destroy a competitor.  However, plaintiff plainly admits that he

failed to take advantage of the free advertising as negotiated during the contractually

provided time period and he has failed to allege any material misstatement of fact by

O'Reilly or reasonable reliance to support a constructive fraud claim.  Accordingly,

because there is no discernable basis for relief articulated by plaintiff, this Court

recommends that defendant's motion to dismiss plaintiff's fifth cause of action be granted.

## CONCLUSION

For the foregoing reasons, this Court recommends that the defendant's motion to dismiss (Dkt. #7) be granted without prejudice.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b)(2) and Local Rule 72.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*,

474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72 of the Local Rules for the Western District of New York, "written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection, and shall be supported by legal authority."  **Failure to comply with the provisions of Local Rule 72 may result in the District Judge's refusal to consider the objection.**

In accordance with the requirements set forth in Local Rule 72, "[a]ny party filing objections to a Magistrate Judge's order or recommended disposition must include with the objections to the District Judge a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge."

**Failure to comply with the provisions of Local Rule 72 may result in the District**

**Judge's refusal to consider the objection.**


       **SO ORDERED.**


DATED:      Buffalo, New York
              May 7, 2014


                                      *s/ H. Kenneth Schroeder, Jr.*
                                      **H. KENNETH SCHROEDER, JR.**
                                      **United States Magistrate Judge**